# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL NO.  1:07CV336

| | | |
|---|---|---|
| **TIMOTHY KIRK FOXX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| **THE TOWN OF FLETCHER, a** | ) | |
| **municipality organized under the** | ) | |
| **laws of North Carolina; MARK** | ) | |
| **BIBERDORF, in his individual and** | ) | |
| **official capacities; LANGDON B.** | ) | |
| **RAYMOND, in his individual and** | ) | |
| **official capacities; MICHAEL STEVE** | ) | |
| **MORGAN, in his individual and** | ) | |
| **official capacities; WILLIAM B.** | ) | |
| **MOORE, in his individual and official** | ) | |
| **capacities; JIM CLAYTON, in his** | ) | |
| **individual and official capacities;** | ) | |
| **HUGH CLARK, in his individual and** | ) | |
| **official capacities; BOB DAVY, in his** | ) | |
| **individual and official capacities; and** | ) | |
| **EDDIE HENDERSON, in his individual** | ) | |
| **and official capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendants' motion to dismiss, which is opposed by the Plaintiff.  For the reasons stated herein, the motion is granted in part and denied in part.

## I. PROCEDURAL HISTORY

Plaintiff's initial complaint against Defendants alleged claims of discrimination and/or retaliation pursuant to 42 U.S.C. § 2000e-3, claims under the United States and North Carolina Constitutions, and state law claims for wrongful termination, negligence, assault, battery, false imprisonment, civil conspiracy and punitive damages.  **Complaint, filed October 18, 2007, at 25-33.**  Along with their answer, Defendants filed a motion to dismiss Plaintiff's complaint.  **Answer, filed December 10, 2007; Defendants' Motion to Dismiss and Memorandum in Support, filed December 10, 2007**.  Plaintiff moved to amend his complaint to allege one or more Defendants waived sovereign immunity through the purchase of liability insurance.  **Plaintiff's Motion to Amend, filed December 19, 2007.**  The motion to amend was allowed and Plaintiff filed an amended complaint on February 4, 2008.  **Order, filed January 25, 2008; Amended Complaint, filed February 4, 2008.**  Thereafter, Defendants' filed an

amended answer and counterclaim.  **Answer to Amended Complaint and Counterclaim of Langdon B. Raymond, filed February 11, 2008.**

Plaintiff filed a notice of affirmative defenses and reply to Defendant Raymond's counterclaims on February 29, 2008.[1]  The Plaintiff timely filed response to the Defendants' motion to dismiss and such is ripe for review.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint.  ***See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)**.  In deciding a motion to dismiss, the Court "'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'"  ***Id*. at 243-44 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).**  The well-pleaded allegations in a plaintiff's complaint are accepted as true and all reasonable factual inferences are construed in the plaintiff's favor.  ***See Edwards*, *supra*, at**

---

[1] Plaintiff's answer to the Defendant's counterclaims also contained a motion to dismiss.  Although Plaintiff's motion is preserved, no brief was filed with the motion and, consequently, the motion has not been ruled on by the Court.  ***See* LCvR 7.1(C)(1) ("Motions to dismiss contained in . . . replies to counterclaims . . . are considered by the Court to be preserved.  A party wishing to have decided any preserved motion shall file a separate motion and supporting brief.").**

**244**.  The motion to dismiss must not be granted "'unless it appears to a

certainty that the plaintiff would not be entitled to relief under any legal

theory which might plausibly be suggested by the facts alleged.'"  ***Harrison***

***v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)**

**(quoting *Canty v. City of Richmond, Va. Police Dep't*, 383 F. Supp.**

**1396, 1399 (E.D. Va. 1974), *aff'd*, 526 F.2d 587 (4th Cir. 1975))**.


### III. FACTUAL HISTORY

Plaintiff has lived in Western North Carolina his entire life.  **Amended**

**Complaint, at 5**.  He studied criminal justice at Mayland Community

College from 1994 to 1996 and graduated at the top of his class from Basic

Law Enforcement Training.  ***Id***.  Plaintiff began his law enforcement career

after graduation, holding positions in the Burnsville and Weaverville Police

Departments, the North Carolina Child Support Enforcement Department,

and the North Carolina Department of Juvenile Justice and Delinquency

Prevention.  ***Id***.  Plaintiff had proved himself a highly competent officer.  ***Id***.

The Town of Fletcher incorporated in 1989 and the Town's Charter

allowed Fletcher to "set up a special force of the [Henderson County]

Sheriff's Department to provide police protection within the Town."  ***Id***. **at 5-**

**6.**  Thereafter, the Town formed the Fletcher Police Department sometime in 1996.  *Id*. **at 6.**

In May 2005, Plaintiff, while employed with the North Carolina Child Support Enforcement Department, assisted the Fletcher Police Department in an ongoing investigation and, according to Plaintiff, played an important role in solving the case.  *Id*.  While assisting the Fletcher Police Department, Plaintiff's primary contact was the Defendant Sergeant Steve Morgan.  *Id*. **at 7.**  Sergeant Morgan later actively recruited Plaintiff to work for the Fletcher Police Department and Plaintiff subsequently submitted an employment application in August 2005.  *Id*.  Plaintiff was contacted by Chief of Police, Defendant Langdon Raymond, to schedule an interview. *Id*.  Following the interview and a required background check, which Chief Raymond personally performed, Plaintiff was hired by the Fletcher Police Department as a patrol officer and began work on October 10, 2005.  *Id*. **at 7-8.**  Sergeant Morgan served as his immediate supervisor.  *Id*. **at 8.**

Plaintiff immediately began to handle cases unassisted and excelled in his new position.  *Id*. **at 8-9**.  In January 2006, Chief Raymond promoted Plaintiff to shift leader.  *Id*. **at 9.**  Chief Raymond conducted a performance review in April 2006 and found Plaintiff's performance was outstanding and

Plaintiff received no negative comments from Chief Raymond. *Id*. In June 2006, Chief Raymond promoted Plaintiff to the rank of Master Police Officer and indicated to Plaintiff that this new position was to provide assistance to Sergeant Morgan in carrying out his duties. *Id*. **at 10-11.**

In June or July 2006, the Fletcher Police Department hired John Munro as a patrol officer. *Id*. **at 11.** According to Plaintiff, it was rumored that Officer Munro had been fired from Buncombe County Sheriff's Department in February 2006 for what may have been sexual misconduct. *Id*. In October 2006, shortly after Munro and Plaintiff began working together on patrol, Plaintiff's wife, Jennifer Foxx, informed Plaintiff she had received inappropriate, sexually-explicit phone calls from Munro. *Id*. **at 12.** Mrs. Foxx had never met Munro or provided him with her contact information. *Id*. Mrs. Foxx informed Plaintiff that the phone calls were unsolicited and caused her to fear Munro**.** *Id*. Plaintiff assumed Munro may have obtained Mrs. Foxx's number from Plaintiff's cell phone while both were on patrol. *Id*. **at 12-13.** On October 6, 2006, Plaintiff contacted the Yancey County Clerk of Court's Office and asked for advice on how he and his wife could stop Munro from making any further calls to Mrs. Foxx.

*Id*. **at 13.** Plaintiff was informed that Mrs. Foxx would need to speak personally with a magistrate about the matter. *Id*.

On or about Saturday, October 7, 2006, Plaintiff informed Sergeant Morgan about Munro's inappropriate phone calls to Mrs. Foxx. *Id*. Sergeant Morgan instructed Plaintiff to inform Chief Raymond about the situation the following Monday morning. *Id*. However, Plaintiff urged Morgan to immediately contact Chief Raymond because Plaintiff was scheduled to work two shifts over the weekend with Munro and that if Morgan would not do so, Plaintiff would contact Chief Raymond himself. *Id*. Again, Sergeant Morgan directed Plaintiff to wait until the following Monday to speak with Chief Raymond. *Id*.

Plaintiff alleges both Defendants Morgan and Raymond had direct knowledge of Munro's past inappropriate conduct towards women and they wanted to keep Plaintiff's complaint about Munro's actions towards Mrs. Foxx from being reported officially or made public. *Id.* Plaintiff recalled that when Munro was first hired, Chief Raymond summoned Plaintiff to his office and inquired if he was aware of any past inappropriate conduct on the part of Munro. *Id*. **at 14.** Raymond advised Plaintiff that he "had heard some things" from the Buncombe County Sheriff's Department that Munro

had been the subject of allegations of sexually inappropriate conduct in the workplace while employed with the Sheriff's Department. *Id.*

During his patrol duty with Munro on October 8, 2006, Plaintiff alleges Munro taunted him and admitted the phone calls to Mrs. Foxx. *Id*. In response, Plaintiff told Munro he hoped the issues regarding the phone calls from Munro to his wife would be resolved and, according to Plaintiff, he walked away and did not see Munro again until the end of the patrol shift. *Id*.

On Monday, October 9, 2006, Plaintiff met with Defendants Chief Raymond and Sergeant Morgan. *Id.* Raymond asked Plaintiff whether he had told anyone other than Morgan about Munro's phone calls to Mrs. Foxx. *Id.* **at 15-16.** Plaintiff advised that he and his wife had contacted the Yancey County Clerk's Office about the possibility of obtaining a restraining order against Munro. *Id.* **at 16.** According to Plaintiff, Raymond reacted by screaming and cursing Plaintiff and Morgan appeared visibly shaken and upset that Plaintiff contacted the Clerk's office. *Id*. Raymond continued screaming and cursing Plaintiff for over two hours. *Id.* Plaintiff made repeated requests to call an attorney and to visit the restroom but Chief Raymond refused to allow Plaintiff to do so. *Id.* Towards the end of the

meeting, Raymond informed Plaintiff he was under internal investigation and further stated, "I'll let you know what for when I find out." *Id*. Chief Raymond then instructed Plaintiff to give a written statement regarding all communications Plaintiff had with any other individuals regarding Munro's conduct towards Mrs. Foxx. *Id.* **at 16-17.**

On October 12, 2006, Raymond informed Plaintiff that he was being demoted from Master Patrol Officer to Patrol Officer for his failure to advise his superiors on October 6, 2006, of the allegations against Munro. *Id.* **at 18.** Plaintiff believes Morgan contacted Raymond before the October 9, 2006, meeting, and advised him of Plaintiff's allegations against Munro. Consequently, Raymond and Morgan had direct knowledge of Plaintiff's allegations prior to the October 9 meeting. *Id*. **at 13.** Plaintiff alleges Raymond and Morgan wanted to discredit him in the event that Munro's past allegations of inappropriate conduct were made public. *Id*. **at 18-19.** Plaintiff requested a copy of the violation notice that detailed the reasons for his demotion. Raymond made a copy of the notice and as he turned away from the copier, he "smacked" Plaintiff on the chest with the copy and grabbed Plaintiff's testicles without any provocation from the Plaintiff. ***Id.***

**at 19**. In addition to the demotion, Chief Raymond rescheduled and drastically cut Plaintiff's shifts. *Id*.

Plaintiff filed an internal grievance with the Fletcher Police Department pursuant to the policies of the Department and the Town of Fletcher. *Id.* On October 23, 2006, Plaintiff met with Defendant Mark Biberdorf, Town Manager, and Chief Raymond about the grievance and requested the Town conduct an outside, independent review of his allegations. *Id*. **at 20.** According to the Plaintiff, Defendant Biberdorf "scoffed" at that suggestion and no such review was ever conducted. *Id*. By letter dated October 23, 2006, Chief Raymond informed Plaintiff that his grievance had been denied. *Id***.** Believing no one with the Town of Fletcher was taking his complaint of assault against Raymond seriously, Plaintiff filed a complaint against Raymond with the Henderson County Magistrate's Office. *Id*. **at 23.**

On October 24, 2006, Sergeant Morgan informed Plaintiff that the Town of Fletcher was suspending him for five days based on allegations that Plaintiff committed numerous policy violations. *Id***. at 21.** Following his suspension, Plaintiff continued to pursue his grievance with the Town of Fletcher. *Id*. On October 31, 2006, Plaintiff filed a charge of discrimination

with the Equal Employment Opportunity Commission ("EEOC") and faxed copies of the complaint to Biberdorf and the Fletcher Police Department. Immediately thereafter, Plaintiff received a phone call from Sergeant Morgan informing him his five-day suspension had been extended indefinitely.  *Id*.  On March 9, 2007, Plaintiff was advised by Town Manager Biberdorf that he was being fired for allegedly stealing a crossbow from a resident of the Town.  *Id.* **at 22.**

Plaintiff's complaint further alleges that Defendant Town of Fletcher "knowingly maintains a policy and practice of discriminating against minorities, including in its hiring practices and employment practices with respect to black employees and female employees[.]"  *Id.* **at 21.**  As an example, the Plaintiff alleges that Defendant Raymond directed that the only female officer with the Fletcher Police Department was to receive no training opportunities despite her repeated requests.  *Id.* **at 21-22.**  Plaintiff alleges that he defended the female officer when Chief Raymond referred to her as a "bitch" and agreed to be a witness in her EEOC proceeding against Chief Raymond and others.  *Id.* **at 22, 25-26.**  Further, Chief Raymond and Sergeant Morgan ordered Plaintiff not to schedule any training courses for the female officer and warned him that his continued

support of her would be detrimental to his law enforcement career.  *Id*. **at**

**26.**  Plaintiff contends that this open support of the female officer led to

adverse employment consequences for him.  *Id.*


## IV.  DISCUSSION

**A.** **Discrimination and/or Retaliation pursuant to 42 U.S.C. § 2000e-3 and State Claims for wrongful termination and negligence in hiring, supervision, and retention**

Defendants seek dismissal of Plaintiff's claims for discrimination

and/or retaliation under Title VII as well as his pendant state claims for

wrongful termination and negligence in hiring, supervision, and retention

against all Defendants except the Defendant Town.  ***See* Defendant's**

**Memorandum,** *supra*, **at 4**.

Plaintiff was employed as a police officer for the Fletcher Police

Department by Defendant Town.  ***See* Amended Complaint,** *supra*, **at 6**.

Defendant Morgan was employed as a sergeant with the Fletcher Police

Department and was Plaintiff's immediate supervisor.  *Id*. **at 7**.  Defendant

Raymond was Chief of Police of the Fletcher Police Department and was

Sergeant Morgan's immediate supervisor.  *Id*.  Defendant Biberdorf was

employed as the Town Manager of Fletcher and was Chief Raymond's

immediate supervisor.  *Id*. **at 8**.  Defendant William Moore was employed

as the Mayor of Fletcher.  *Id*. **at 2**.  Defendants Eddie Henderson, Jim

Clayton, Hugh Clark and Bob Davy are members of the Fletcher Town

Council and Plaintiff alleges they, along with Defendant Mayor Moore,

failed to carry out their statutory duties to properly supervise Chief

Raymond.  *Id*. **at 2-4, 23**, **25 ("Every Defendant has engaged in a**

**pattern and practice of condoning the discriminatory, retaliatory,**

**unlawful and corrupt practices, and each has acted as an agent for**

**the other in maintaining the hostile work environment at the Fletcher**

**Police Department and the corruption within the Town of Fletcher.").**

Plaintiff seeks to hold Defendant Town and the remaining Defendants, in

their individual and official capacities, liable for Title VII violations.  *Id*. **at 1**.

Under Title VII "it shall be an unlawful employment practice for an

employer to discriminate against any of his employees . . . because he has

opposed any practice made an unlawful employment practice . . . , or

because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter."

**42 U.S.C. § 2000e-3(a).**  The employee must be engaged in "protected

activity" under this provision in order for Title VII protection to apply and

such activity "is divided into two categories, opposition and participation."

***Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 257 (4th**

**Cir. 1998)**.  Title VII defines an employer as "a person engaged in an

industry affecting commerce who has fifteen or more employees" and "any

agent of such person."  **42 U.S.C. § 2000e(b); *see Lissau v. S. Food**

***Serv.*, *Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).**  In *Lissau*, the Fourth Circuit

held that only an employer and not an individual may be held liable for Title

VII violations; to do otherwise, "would improperly expand the remedial

scheme crafted by Congress."  ***Id.* at 181.**

> [A] large number of circuit courts have held that individual
> supervisors are not liable under Title VII.  In fact, every circuit
> that has confronted this issue since the enactment of the [Civil
> Rights Act] has rejected claims of individual liability. These
> circuits have founded this conclusion on the language of Title
> VII and the fact that its remedial scheme seems so plainly tied
> to employer, rather than individual, liability.

***Id.* (citing *Tomka v. Seiler Corp*, 66 F.3d 1295, 1317 (2d Cir. 1995); *Dici**

***v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Grant v. Lone Star**

***Co.*, 21 F.3d 649, 653 (5th Cir. 1994); *Wathen v. General Elec. Co.*, 115**

**F.3d 400, 406 (6th Cir. 1997); *Williams v. Banning*, 72 F.3d 552, 554 (7th**

**Cir. 1995); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255**

**(8th Cir. 1994); *Miller v. Maxwell's Int'l. Inc.*, 991 F.2d 583, 588 (9th Cir.**

**1993);** *Haynes v. Williams***, 88 F.3d 898, 901 (10th Cir. 1996);** *Smith v.*

*Lomax***, 45 F.3d 402, 403 n.4 (11th Cir. 1995);** *Gary v. Long***, 59 F.3d**

**1391, 1399 (D.C. Cir. 1995)).**

Plaintiff's complaint clearly alleges that all the Defendants are

employees of the Town of Fletcher, and as such, are not liable under Title

VII in their individual capacities. Therefore, Plaintiff's claims for violations of

Title VII against the  Defendants Biberdorf, Raymond, Morgan, Moore,

Clayton, Clark, Davy, and Henderson, in their individual capacities, must

be dismissed.

However, "[u]nder Title VII, suits against individuals must proceed in

their official capacity[.]"  *Sauers v. Salt Lake County***, 1 F.3d 1122, 1125**

**(10th Cir. 1993)**.  An individual may qualify as an employer or agent of the

employer under Title VII "if he or she serves in a supervisory position and

exercises significant control over the plaintiff's hiring, firing or conditions of

employment."  *Paroline v. Unisys Corp.***, 879 F.2d 100, 104 (4th Cir.**

**1989) (citing** *York v. Tennessee Crushed Stone Ass'n***, 684 F.2d 360,**

**362 (6th Cir. 1982)),** *vacated in part on other grounds on reh'g***, 900**

**F.2d 27 (4th Cir. 1990);** *see also Tafoya v. Adams***, 612 F. Supp. 1097,**

**1104 (D. Colo. 1985),** *aff'd***, 816 F.2d 555 (10th Cir. 1987);**  *Hamilton v.*

*Rodgers*, **791 F.2d 439, 442 (5th Cir. 1986).** "The supervisory employee need not have the ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions." ***Paroline*, *supra* (citing *Tafoya, supra*, at 1105).**

The facts as alleged in Plaintiff's complaint, taken as true, tend to show that the Town of Fletcher, through the individual Defendants, had the ultimate responsibility for hiring, demoting, promoting and firing employees, and that each of the named Defendants exercised some level of control over these personnel decisions and conditions of employment. ***See Amended Complaint, at 10 ("Town of Fletcher was considering promoting Raymond to police chief"), (Town of Fletcher hired Raymond); 11 ("Town of Fletcher hired John Munro as a patrol officer for the Fletcher Police Department"); 19 ("Town of Fletcher had no intention to demote, fire, or otherwise reprimand Plaintiff in any way until Plaintiff complained to Sergeant Morgan"); 20 ("Chief Raymond advised Plaintiff that he was denying Plaintiff's grievance"), ("Town Council failed and refused [to] make any independent review of the actions of its employees, but rather, delegated full authority to Biberdorf, Chief Raymond, and Morgan"), ("Town Council members***

**knew or had reasons to know that Plaintiff was being wrongly**

**disciplined and maligned in the media"), ("Moore, Henderson, Davy,**

**and Clayton, have all openly supported the actions of Chief Raymond**

**in the news media"); 22 (Plaintiff filed a charge of discrimination with**

**the EEOC and made this known to his supervisors and his 5-day**

**suspension was extended indefinitely); 23 ("Biberdorf, Morgan,**

**Moore, Clayton, Clark, Davy, and Henderson each had opportunities**

**and capabilities to individually prevent Raymond's actions and**

**Plaintiff's injuries," and each one failed to follow their statutory duties**

**in connection with their governmental positions with the Town of**

**Fletcher); 25 (Plaintiff supported the lone female officer in her EEOC**

**claim against Defendants and agreed to testify; Raymond and Morgan**

**made clear that Plaintiff would suffer adverse employment**

**consequences).**

These facts, accepted as true, support Plaintiff's claim that each

Defendant in their official capacity contributed to either ratifying through

inaction or directly supporting adverse employment actions taken against

Plaintiff because of his participation in actions protected by Title VII.  ***See***

**42 U.S.C. § 2000e-3(a);** *see also Laughlin*, **149 F.3d at 257 (Title VII**

**protects opposition and participation in proceedings arising under subchapter).**  Accordingly, Defendants' motion to dismiss Title VII claims against the named Defendants in their official capacities is denied.

Defendants have moved to dismiss Plaintiff's pendant state law claims of wrongful discharge and negligence in hiring, retention, and supervision against the individual Defendants in their individual and official capacities.  *See* **Defendant's Memorandum,** *supra***, at 5**.  Defendants contend that only an employer can be held liable for these claims.  ***Id***. **at 5-7 (citing** *Houpe v. City of Statesville***, 128 N.C. App. 334, 344, 497 S.E.2d 82, 89 (1998)).**

Plaintiff admits he was employed by the Town of Fletcher as a police officer but does not claim he was employed by any of the other Defendants either in their individual or official capacities.  ***See*** **Amended Complaint,** *supra***, at 6**.  In the case cited by Defendants, the plaintiff alleged the City of Statesville alone, and not any of the named individual defendants, hired him as a city police officer.  ***Houpe, supra,*** **at 344, 497 S.E.2d at 89**. The individual defendants named in the complaint included a city manager, a former chief of police, and other officers from the Statesville Police Department.  ***Id***. **at 337, 497 S.E.2d at 85.**  The Court held that plaintiff's

claims against the individual defendants employed by the City of Statesville

should have been dismissed by the trial court because only the employer

could be held liable for wrongful discharge and plaintiff did not allege any

of the named individual defendants were his employer. *Id.*; *see Sides v.

Duke University*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828 (1985),

*overruled on other grounds by Kurtzman v. Applied Analytical Indus.,

Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997).

In a claim for negligent hiring or retention, Plaintiff must prove, "(1) a

specific tortious conduct by the employee; (2) the employee's

incompetence or unfitness; (3) the employer's actual or constructive notice

of the employee's incompetency or unfitness; and (4) injury resulting from

the employee's incompetency or unfitness." *White v. Consol. Planning,

Inc.*, 166 N.C. App. 284, 292, 603 S.E.2d 147, 154 (2004) (citing *Medlin

v. Bass*, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (N.C. 1990)). Excepting

the Defendant Town, Plaintiff did not allege that any of the individual

Defendants were his employer in either their official or individual capacities.

Therefore, Defendants' motion to dismiss Plaintiff's pendant state claims of

wrongful discharge and negligence in hiring, supervision, and retention as

to the individual Defendants in both their individual and official capacities is allowed.

**B.    First Amendment Claims under the United States and North Carolina Constitutions**

Plaintiff alleges Defendants violated his right to free speech under the First Amendment by retaliating against him following his complaints to his superiors at the Fletcher Police Department and inquiries made to the Yancey County Clerk of Court regarding Officer Munro's actions.  **U.S. Const. amend. I**; *see* **Amended Complaint,** *supra***, at 27-29.**

The First Amendment protects the freedom of speech and prohibits a public employer "from discharging or taking other adverse action against one of its employees on a basis that infringes the employee's constitutionally protected interest in freedom of speech."  ***Edwards,* 178 F.3d at 245-46 (citing *Rankin v. McPherson,* 483 U.S. 378, 383 (1987))**. In examining an employee's First Amendment claim, the Court must balance "'the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees.'" ***Id.* at 246 (quoting *Pickering v. Bd. of Educ.*,**

**391 U.S. 563, 568 (1968)).** Therefore, in order to resolve the question of whether the Plaintiff here had a constitutionally protected right requires a determination of whether, after accepting all the well-pleaded allegations presented in his amended complaint as true and drawing reasonable inferences therefrom in his favor, he "was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest." ***Id.* (citing *Arvinger v. Mayor and City Council*, 862 F.2d 75, 77 (4th Cir. 1988)).** "Speech involves a matter of public concern if it affects the social, political, or general well-being of a community." ***Id.* (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983))**. Speech that concerns "'[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest [does] not constitute speech about matters of public concern'" and is not protected by the First Amendment. ***Id.* at 246-47 (quoting *Stroman v. Colleton County Sch. Dist.*, 981 F.2d 152,156 (4th Cir. 1992)).** "Whether speech involves a matter of public concern is a question of law to be determined *de novo.*" ***Id.* (citing *Arvinger*, *supra*).**

Plaintiff alleges he was aware of rumors regarding Officer Munro's inappropriate sexual conduct while Munro was employed by Buncombe

County Sheriff's Department and that he first communicated this information to Chief Raymond in response to Raymond's inquiries.  ***See Amended Complaint, *supra*, at 14.***  Plaintiff admitted to Raymond and Morgan that he discussed the unsolicited and sexually inappropriate phone calls placed by Munro to Mrs. Foxx with the Yancey County Clerk of Court's Office.  Plaintiff alleges the Fletcher Police Department had no intention to take any adverse action against him until he complained to Sergeant Morgan about Officer Munro's conduct.  ***Id*. at 19.**  After he complained to Morgan and the Yancey County Clerk of Court, Plaintiff was demoted from Master Police Officer to Police Officer and his work schedule and hours were negatively impacted.  ***Id*. at 18-19.**  Plaintiff filed a grievance with the Town of Fletcher concerning Chief Raymond's assault on him and his concern about Officer Munro's conduct towards his wife. ***Id*. at 19-20.**  This grievance was denied, and on October 24, 2006, Plaintiff received notification that he had been placed on a five-day suspension for policy violations.  ***Id*. at 21.**  Plaintiff continued to pursue his grievance with the Town of Fletcher.

The Court finds that these facts, as plead in Plaintiff's complaint, represent speech that concerns "personal grievances, complaints about

conditions of employment, or expressions about other matters of personal interest [and does] not constitute speech about matters of public concern" and, therefore, is not protected by the First Amendment. **Edwards, supra.** Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim is allowed.

Defendants' also move to dismiss Plaintiff's free speech claims that the Town of Fletcher as a municipality and the remaining named Defendants in their official and individual capacities violated his right to free speech under the North Carolina Constitution. **See Defendants' Memorandum, supra, at 14-17; Amended Complaint, supra, at 1, 28-29; N.C. Const. art. I, § 14.**

A claim for a violation of one's right to free speech under the North Carolina Constitution "may be asserted only against state officials acting in their official capacities." **Love-Lane v. Martin, 355 F.3d 766, 789 (4th Cir. 2004) (citing Corum v. Univ. of N.C., 330 N.C. 761, 413 S.E.2d 276, 293 (1992))**. In *Love-Lane*, the plaintiff filed suit against school superintendent individually and in his official capacity for violating her right to free speech under the North Carolina Constitution. **Id.** In applying North Carolina law, the Fourth Circuit affirmed the district court's dismissal of the state

constitutional claims against the defendant in his individual capacity**. *Id.***
Therefore, the claims of the Plaintiff here for a violation of his right to free
speech under the North Carolina Constitution must also be dismissed
against the Defendants in their individual capacities.

Under North Carolina law, "a plaintiff whose rights under the North
Carolina Constitution have been violated may pursue an action directly
under the state constitution only if there is no other remedy under state law
to redress the violation." ***Id*. (citing *Corum*, 330 N.C. at 782, 413 S.E.2d
at 289).** Plaintiff has asserted state law claims for wrongful termination,
assault, battery, punitive damages, civil conspiracy and negligent hiring,
supervision, and retention. ***See generally* Amended Complaint*, supra,*
at 29-33.** The Court finds that these claims provide one or more adequate
remedies under state law, and Plaintiff is precluded from asserting an
action under the North Carolina Constitution. ***See Love-Lane, supra.***
However, assuming *arguendo* that Plaintiff's state law claims set out above
do not provide one or more adequate remedies, his free speech claim
under the North Carolina Constitution still must be dismissed.

The North Carolina Supreme Court held that "'for the purpose of
applying our State Constitution's Free Speech Clause we adopt the United

States Supreme Court's First Amendment jurisprudence.'" ***DeWitt v. Mecklenburg County*, 73 F. Supp. 2d 589, 606 n.12 (W.D.N.C. 1999) (quoting *State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d 832, 841 (1993))**. In applying the same analysis to Plaintiff's claim under the State's Constitution as was applied to the federal free speech claim, the Court finds that these facts, taken as true in Plaintiff's complaint, represent speech containing "personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest [and does] not constitute speech about matters of public concern;" therefore, such speech is not protected by the First Amendment. ***Edwards*, 178 F.3d at 246-47.** Accordingly, Defendants' motion to dismiss Plaintiff's free speech claim under the North Carolina Constitution is granted as to the Town of Fletcher and all remaining Defendants in their official capacities.

**D.    Due Process Claims under the United States and North Carolina Constitutions**

Defendants seek dismissal of Plaintiff's due process claims against all Defendants. ***See* Defendants' Memorandum, *supra*, at 10-12**. Plaintiff alleges that Defendants' "discriminatory and retaliatory actions against" him violated his rights to due process under the Fourteenth

Amendment, which provides that "no state shall deprive any person of life, liberty, or property, without due process of law" and his due process rights under the North Carolina Constitution. ***See* Amended Complaint, *supra*, at 27-29**; **U.S. Const. amend. XIV**; **N.C. Const. § 19.** Accepting as true the allegations of the complaint, Plaintiff states he was demoted after disclosing to Chief Raymond and Sergeant Morgan that he discussed the inappropriate phone calls made by Officer Munro to Plaintiff's wife with the Yancey County Clerk of Court's Office, that Plaintiff was placed on a five-day suspension, that he was placed on an indefinite suspension after notifying his superiors that he had filed a discrimination claim with the EEOC, and that he was ultimately fired. ***Id*. at 18-19, 22-24.**

The threshold question in examining the due process claim is whether Plaintiff had a protected property interest in his employment. ***See Pittman v. Wilson County*, 839 F.2d 225, 226-27 (4th Cir. 1988) ("The procedural safeguards encompassed by the due process clause extend to [plaintiff's] continued employment only if [he] had a property interest in that employment.").** North Carolina law is determinative of whether the Plaintiff had such a protected interest in employment in this case. ***Id.* at 227 (citing *Bishop v. Wood*, 426 U.S.**

**341, 344 (1976)).**  State law provides that employment is generally "at-will"

unless a plaintiff can show the presence of a contract defining the terms

and duration of employment or identify a statute or ordinance that protects

plaintiff's employment.  **See Pittman, 839 F.2d at 227.**  Absent one of

these conditions, employment is "'terminable at the will of either party,

irrespective of the quality of the performance by the other party.'"  **Id.**

**(quoting Harris v. Duke Power Co., 319 N.C. 627, 629, 356 S.E.2d 357,**

**359 (1987)).**  Plaintiff has not alleged the presence of an employment

contract with the Town of Fletcher or with any other individual Defendant.

Plaintiff does allege in his claim for wrongful termination (not his due

process claim) that the adverse discipline and his subsequent termination

were retaliatory and done for unlawful purposes and prohibited under the

North Carolina Equal Employment Practices Act ("N.C.E.E.P.A.").  **See**

**N.C. Gen. Stat. § 143-422.1 et. seq.;**[2] **Amended Complaint, supra, at**

**29**. "[T]he N.C.E.E.P.A. on its face 'does not express any public policy

concerning retaliation for opposition to any form of discriminatory practice'

_____

[2] This statute provides: "It is the public policy of this State to protect
and safeguard the right and opportunity of all persons to seek, obtain, and
hold employment without discrimination or abridgement on account of race,
religion, color, national origin, age, sex or handicap by employers which
regularly employ 15 or more employees."  **N.C. Gen. Stat. § 143-422.2.**

and no North Carolina court has interpreted it to establish a claim for retaliatory discharge." *See Dewitt v. Mecklenburg County,* **73 F. Supp. 2d 589, 604-05 (W.D.N.C. 1999) (quoting *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997); *see also Chung v. BNR, Inc./Northern Telecom. Inc.*, 16 F. Supp. 2d 632, 634 (E.D.N.C. 1997).** These cases make clear the scope of protection under N.E.E.P.A., namely, the statute protects only the right to "hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." *See* **N.C. Gen. § 143-422.2.** Plaintiff does not fall within this statutory protection.

Therefore, absent a showing of statutory protection or a contract regarding his employment, Plaintiff's employment is presumed to have been terminable at the will of his former employer. Defendants' motion to dismiss Plaintiff's due process claims under the United States and North Carolina Constitutions against Defendant Town of Fletcher and the remaining Defendants in their individual and official capacities is granted.

**D. Plaintiff's Claim for Civil Conspiracy**

Defendants also move to dismiss Plaintiff's claim for civil conspiracy as to all Defendants. *See* **Defendants' Memorandum,** *supra***, at 17-20.** Plaintiff alleges Defendants Moore, Clayton, Clark, Davy, Henderson, Biberdorf, Raymond and Morgan reached an agreement to unlawfully deprive him of employment with the Town of Fletcher, to disrupt his certification with the North Carolina Training and Standards Commission*,* and to prevent his advancement in a law enforcement career. ***See*** **Amended Complaint,** *supra,* **at 32-33.** Each of the above named individual Defendants are employed by the Town of Fletcher and contend "that where all of the alleged conspirators are employees of a single employer, the 'plurality of actors' requirement is not met." **Defendants' Memorandum,** *supra***, at 18.**

"It is black letter law that in order to state a claim for conspiracy, it must be alleged that two or more persons or entities were involved." ***Turner v. Randolph County*, 912 F. Supp. 182, 186 (M.D.N.C. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985)).** In *Buschi*, the Fourth Circuit held that the intracorporate conspiracy doctrine prevented a suit against a corporation and its agents whether such agents

were sued in their official or individual capacities.  *Id.* **at 1253.**  This doctrine was first adopted by the Fourth Circuit in 1974, and stands for the proposition that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."  *Id.* **at 1251 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)); *see also, Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974).**  The Plaintiff has alleged a conspiracy by the individual Defendants in their official and individual capacities; for the reasons stated in *Buschi*, Defendants' motion to dismiss this claim as to all Defendants will be allowed.

**E.      Defendants' Liability Based on Waiver of Sovereign Immunity**

Plaintiff alleged state common law claims of wrongful termination, negligence, assault, battery, false imprisonment, civil conspiracy and punitive damages against the Defendant Town of Fletcher and Defendants Moore, Clayton, Clark, Davy, Henderson, Biberdorf, Raymond and Morgan in their individual and official capacities.  Plaintiff's amended complaint alleges these Defendants waived sovereign immunity through the purchase

of liability insurance.  *See* **Amended Complaint,** *supra***, at 25.**

Defendants moved to dismiss Plaintiff's claims on the grounds that

"Defendant Town of Fletcher and the Individual Defendants in their official

capacity" were protected by sovereign immunity.  *See* **Amended Answer**

**to Complaint,** *supra***, at 3**.  However, Defendants also admitted that

Defendant Town of Fletcher "purchased and has in effect a policy of

insurance which may provide certain coverage to the Defendants with

respect to Plaintiff's claims and has waived governmental immunity by the

purchase of said insurance to the extent not excluded by any deductible,

retention or other policy exclusion."  *Id.* **at 19.**

"'As a general rule, the doctrine of governmental, or sovereign,

immunity bars actions against, *inter alia*, the state, its counties, and its

public officials sued in their official capacity.'"  ***Clancy v. Onslow County***,

**151 N.C. App. 269, 272-73*, * 564 S.E.2d 920*, * 923 (2002) (quoting**

***Messick v. Catawba County***, **110 N.C. App. 707, 714, 431 S.E.2d 489,**

**493 (1993)).**  However, a governmental, or sovereign, entity may waive

their immunity by purchasing liability insurance, but only to the extent

specified in the insurance policy.  *Id.* **at 273, 564 S.E.2d at 923;** *see, e.g.,*

***Herring v. Liner***, **163 N.C. App. 534, 537, 594 S.E.2d 117, 119 (2004) ("A**

**county or city board of education is a governmental agency and its**

**employees are not ordinarily liable in a tort action unless the board**

**has waived its sovereign immunity.");** *see also* **N.C. Gen. Stat. § 106A-**

**485(a) ("any city is authorized to waive its immunity from civil liability**

**in tort by the act of purchasing liability insurance.").** Therefore,

Defendants' motion to dismiss Plaintiff's common law claims against

Defendant Town of Fletcher and the named Defendants in their official

capacities on the basis of sovereign immunity is denied.


**F.      Claim for Punitive Damages**

Defendants have also moved to dismiss Plaintiff's request for

punitive damages against Defendant Town of Fletcher and the remaining

Defendants in their official capacities. ***See* Defendants' Memorandum,**

***supra*, at 22-24.** Plaintiff concedes the case law supports dismissal of the

punitive damages claim against the Defendant Town. ***See* Plaintiff's**

**Response, *supra*, at 13; *see also Long v. Charlotte*, 306 N.C. 187, 208,**

**293 S.E.2d 101, 115 (1982) ("in the absence of statutory provisions to**

**the contrary, municipal corporations are immune from punitive**

**damages"); *Jackson v. Housing Auth. of High Point*, 316 N.C. 259,**

**262, 341 S.E.2d 523, 525 (1986) ("there is no question but that the defendant [municipal corporation] is immune from a claim for punitive damages" for negligence").**

Plaintiff's punitive damages claims against the remaining Defendants in their official capacities likewise must be dismissed.  ***See* Amended Complaint, *supra*, at 33.**  "[B]ecause a cause of action against an officer in his official capacity is essentially a claim against the [Town], plaintiff likewise may not seek punitive damages from [defendant] in his official capacity."  ***Houpe*, 128 N.C. App. at 351, 497 S.E.2d at 93 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")).**

Plaintiff has no remaining claims from which to recover compensatory damages from Defendants Moore, Clayton, Clark, Davy, and Henderson in their individual capacities; therefore, Plaintiff's claims for punitive damages against them should also be dismissed.  ***See* Defendants' Memorandum, *supra*, at 23; N.C. Gen. Stat. § 1D-15 (requiring a plaintiff to recover compensatory damages before any recovery for punitive damages).**

Plaintiff alleged claims of assault and battery against Defendant Raymond and Defendant Town and asserted a claim for punitive damages against Defendant Raymond.  ***See* Amended Complaint, *supra*, at 31-32.** In taking the factual allegations relating to these claims as true, the assault and battery claims are not properly dismissed at this stage against the Defendant Town and Raymond in his official and individual capacity nor are Plaintiff's claims for punitive damages against Defendant Raymond in his individual capacity.

Plaintiff alleged false imprisonment against Defendant Town and Defendants Biberdorf, Raymond, and Morgan in their official and individual capacities and asserted a claim for punitive damages against Defendant Raymond.  ***Id.* at 33**.  In accepting the factual allegations as true at this stage, this claim for false imprisonment is not properly dismissed and the claim for punitive damages arising in connection with the false imprisonment allegation likewise remains against Defendant Raymond in his individual capacity.

## G. Defendants' remaining motions to dismiss

Defendants also seek dismissal of Plaintiff's claim which they construe as alleging a violation of his Sixth Amendment right to counsel and Plaintiff's alleged claim for gender discrimination under Title VII because he is not a member of a protected class. *See* **Defendants' Memorandum,** *supra***, at 3, 12**. Plaintiff asserts he has pled no claim and seeks no relief for an alleged violation of his right to counsel or for gender discrimination under Title VII. *See* **Plaintiff's Response,** *supra***, at 6, 11.** Therefore, Defendants' motions to dismiss as to these issues will be denied as moot.

## V.  ORDER

**IT IS, THEREFORE ORDERED** that Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part as follows:

1.  Plaintiff's claims of discrimination and/or retaliation pursuant to Title VII are **DISMISSED WITH PREJUDICE** as to all Individual Defendants in their individual capacities;

2.    Defendants' motion to dismiss Plaintiff's claims of discrimination and/or retaliation pursuant to Title VII is **DENIED** as to all Individual Defendants in their official capacities.

3.    Plaintiff's pendant state claims of wrongful termination and negligence in hiring, retention and supervision are **DISMISSED WITH PREJUDICE** as to all Individual Defendants in both their individual and official capacities.

4.    Plaintiff's claims of violations of free speech and due process pursuant to the United States Constitution are hereby **DISMISSED WITH PREJUDICE** as to all Defendants.

5.    Plaintiff's claims of violations of free speech and due process pursuant to the North Carolina Constitution are hereby **DISMISSED WITH PREJUDICE** as to all Defendants.

6.    Plaintiff's claim of civil conspiracy is hereby **DISMISSED WITH PREJUDICE** as to all Individual Defendants in both their official and individual capacities.

7.    Defendants' motion to dismiss Plaintiff's pendant state claims pursuant to sovereign immunity is **DENIED**.

8.     Plaintiff's claims for punitive damages are hereby **DISMISSED WITH PREJUDICE** as to the Defendant Town of Fletcher and all Individual Defendants in their official capacities.

9.     Plaintiff's claims for punitive damages are hereby **DISMISSED WITH PREJUDICE** as to the Defendants William Moore, Mark Biberdorf, Jim Clayton, Hugh Clark, Bob Davy, Michael Morgan and Eddie Henderson, in their individual capacities.

10.     Defendants' motions to dismiss Plaintiff's alleged claims of gender discrimination and Sixth Amendment violation are hereby **DENIED** as moot.

As a result of the rulings herein, Plaintiff's claims of discrimination and/or retaliation pursuant to Title VII remain against the Town of Fletcher and all Individual Defendants in their official capacities; Plaintiff's pendant state claims of wrongful termination and negligence in the hiring, retention and supervision remain as to the Town of Fletcher only; Plaintiff's pendant state claims of assault, battery, and false imprisonment remain as to the Town of Fletcher and Defendant Raymond in his official and individual capacity; Plaintiff's pendant state law claim for false imprisonment remains as to Defendants Mark Biberdorf and Michael Morgan in their official and

individual capacities; and Plaintiff's claims for punitive damages remain only as to Defendant Langdon Raymond, in his individual capacity.

In view of the fact that a proposed discovery plan was filed while the Defendants' motion to dismiss was pending, the Court will provide the parties an opportunity to file an amended plan should they wish to do so.

**IT IS FURTHER ORDERED** that the parties are afforded to and including **APRIL 14, 2008**, in which to file an amended discovery plan.

Signed: April 2, 2008

Lacy H. Thornburg
United States District Judge